216 N.J. Super. 557 (1987)
524 A.2d 478
WILLIAM ALLEN AND PATRICIA SCHUSTER, PLAINTIFFS,
v.
CITY OF BORDENTOWN, DEFENDANT, AND TOWNSHIP OF WILLINGBORO, INTERVENOR.
Superior Court of New Jersey, Law Division Burlington County.
Decided February 13, 1987.
*560 Charles J. Casale, Jr. for plaintiffs.
Jean Hartman Culp for defendant (Davis, Reberkenny & Abromowitz, attorneys).
William John Kearns, Jr. for intervenor (Kearns & Kearns, attorneys).
HAINES, A.J.S.C.
Numerous municipalities throughout the country have adopted curfew ordinances intended for the control and protection of juveniles. The dissent to the denial of certiorari in Bykofsky v. Middletown, 401 F. Supp. 1242 (M.D.Pa. 1975), aff'd 535 F.2d 1245 (3 Cir.1976), cert. denied 429 U.S. 964, 97 S.Ct. 394, 50 L.Ed.2d 333 (1976), refers to "thousands of towns with similar [curfew] ordinances." 429 U.S. at 965, 97 S.Ct. at 395. A few state and federal courts have considered their validity but no case has reached the United States Supreme Court. Curfew ordinances have not been the subject of any published *561 opinion in New Jersey, although several of our municipalities have adopted them. Two are involved in the present litigation; Newark adopted one in 1984, Newark, N.J. Rev. Ordinances tit. 17, ch. 2, § 4 (1984), Trenton in 1983, Trenton, N.J. Ordinances, §§ 83-134 (1983). The issues raised by these ordinances involve not only the constitutional rights of children and parents but also the power of government to curtail those rights. These questions have not been settled.
The City of Bordentown adopted its nonemergency curfew ordinance in 1980 as an amendment to an existing anti-loitering ordinance. It prohibits minors under 18 years-of-age, with certain exceptions, from being in public places between the hours of 9:00 p.m. and 6:00 a.m. and charges parents with responsibilities for their children's behavior. Its reasons for doing so do not appear in the record as part of the enactment or otherwise.
Plaintiffs, William Allen and Patricia Schuster, as parents of Keith Allen and Scott Schuster, age 16 and 17 respectively, have been charged with curfew violations. They allegedly occurred when (1) Keith Allen was found walking on a public street in the city at 10:46 p.m. on May 15, 1986, and (2) when Scott Schuster was found eating in a restaurant in the city at 10:15 p.m. The parents, on conviction, are subject to a fine not exceeding $300, or imprisonment not exceeding 30 days, or both.
The parents have applied to this court for an injunction enjoining the enforcement of the ordinance. The Township of Willingboro has been permitted to intervene by reason of its concern about the validity of its own curfew ordinance, although the question of its validity is not considered in these proceedings. This opinion responds to an order to show cause. It concludes that Bordentown's curfew ordinance is facially unconstitutional and therefore unenforceable.

*562 A. Police Power.

N.J.S.A. 40:48-1 provides that municipalities may "make, amend, repeal and enforce ordinances" to preserve the public peace and order and to prohibit any practice tending to annoy or injure persons in the public streets. N.J.S.A. 40:48-2 authorizes municipalities to adopt ordinances for the "protection of persons and property, and for the preservation of the public health, safety and welfare...." Our Constitution provides that any law concerning municipal corporations shall be liberally construed in their favor. N.J. Const. (1947), Art. IV, § VII, par. 11. Moreover, ordinances are presumed valid and reasonable. "This presumption may be overcome only by proofs that preclude the possibility that there could have been any set of facts known to the legislative body or which could reasonably be assumed to have been known which would rationally support a conclusion that the enactment is in the public interest." Hutton Park Gardens v. West Orange, 68 N.J. 543, 565 (1975).
The Bordentown curfew ordinance is examined here with these precepts in mind.

B. Vagueness.

An ordinance containing language so imprecise that it cannot be understood by persons of ordinary intelligence does not give fair notice of the acts which it forbids or requires and therefore denies due process. Smith v. Goguen, 415 U.S. 566, 94 S.Ct. 1242, 39 L.Ed.2d 605 (1974). An ordinance which fails to set forth adequate standards attracts discriminatory enforcement. Ibid. Vague language and inadequate standards also permit the subjective and therefore impermissible enforcement of penal ordinances by law enforcement personnel. Grayned v. City of Rockford, 408 U.S. 104, 108-109, 92 S.Ct. 2294, 2298-2299, 33 L.Ed.2d 222 (1972). The claim that the Bordentown ordinance is unconstitutionally vague is clearly correct.
Section 4 of the ordinance authorizes a police officer "in the exercise of reasonable judgment," to determine that any *563 person in any "public place" is violating the anti-loitering provisions of the ordinance. He may order such person to leave "if he deems it necessary for the preservation of the public peace and safety, or the protection ... use or enjoyment" of public or private real property and "facilities." If the order is not obeyed, or the offender returns to the public place within three hours, the ordinance is violated. The definition of "public place" includes private real property and certain motor vehicles. The term "facilities" is not defined.
The words "reasonable judgment," standing alone, provide no ascertainable standard by which to measure the decision of a police officer. This is especially significant when dealing with a law which restricts constitutionally guaranteed freedoms and provides criminal sanctions for its violation. What judgment is "reasonable"? The discretion given to the officer is nearly unrestricted. No comfort is provided by the law's requirement that the officer's "reasonable judgment" be used to determine whether "the presence of any person ... in any public place is creating, causing or contributing" to:
a danger of the breach of the peace; ... any disturbance or annoyance to the comfort and repose of any person; obstruction of the free passage of pedestrians, bicycles, baby carriages and strollers, or vehicles; or obstruction, molestation or inference with any person by the utterance of loud and offensive or profane or indecent language, or audible and annoying, offensive, disgusting, insulting or sexually suggestive remarks ... to ... any person in whose hearing the same are made.
These provisions permit the officer in the exercise of his "reasonable judgment" to speculate subjectively as to whether the enumerated dangers are likely to occur in the future, whether action is necessary to preserve the peace, what may be an "annoyance," what constitutes "free passage" of pedestrians and vehicles and what language is "offensive or profane or indecent ... or annoying."
Many of these words, if viewed as modifiers of the term "reasonable judgment," are vague themselves. What is likely to "create a danger" of a breach of the peace? What is a "disturbance or annoyance"? Coates v. Cincinnati, 402 U.S. *564 611, 91 S.Ct. 1686, 29 L.Ed.2d 214 (1971) considered an ordinance which prohibited three or more persons from assembling on a sidewalk and conducting themselves in a manner which would be "annoying to persons passing by." The Court held that the word "annoying" does not provide a standard and that the ordinance was unconstitutional. Cincinnati was free to enact reasonable ordinances dealing with the use of sidewalks and streets but could not "constitutionally do so through the enactment and enforcement of an ordinance whose violation may entirely depend upon whether or not a policeman is annoyed." Id. at 614, 91 S.Ct. at 1688. What is "free passage"? Does a pedestrian or a bicycle or a stroller need three feet or six feet for passage to be free? What language is "offensive"? Other terms are equally imprecise but there is no point in extending the analysis. These modifiers do not modify; they expand the almost unfettered discretion of the officer.
One court, dealing with a curfew ordinance, found that the words "reasonable necessity" were not impermissibly vague. In Bykofsky v. Middletown, supra, the court said that "reasonable necessity" is a widely used, well understood phrase constituting an ascertainable fixed standard. 401 F. Supp. at 1249. "Reasonable necessity," however, is not the same as "reasonable judgment." Arguably, "necessity" is a term more precise than "judgment" but this court finds both phrases to be less instructive than the law requires.
Other provisions in the Bordentown ordinance are equally vague and equally destructive to its validity. Section 6 provides that the curfew shall not apply to a minor who is "upon an emergency errand or upon legitimate business," if the minor carries a police department pass. No definition of these terms appears in the ordinance. An "emergency errand" could be one required for the purpose of securing immediate medical assistance for an injured parent or one merely designed to correct a social omission, such as the failure to deliver a promised gift. The first is surely an "emergency errand" but *565 most would think the second is not. That determination, however, is subjective. The failure to deliver the gift may promote a family crisis and therefore be clearly an "emergency" in the minds of all members of the family but not in the mind of a police officer. The phrase cannot survive the vagueness challenge.
The same must be said of the words "legitimate business." The word "legitimate" is not defined. Does it mean business permitted by law? Is business "legitimate" because the minor so believes? Who is to say what is "legitimate business"? Again, the definition will be supplied by a police officer on a subjective basis permitting the discriminatory enforcement of the ordinance.
The Bordentown ordinance also requires possession of a pass issued by the police department of the city upon application of the parent or guardian. No language in the ordinance provides any direction as to when a pass shall be issued by the department. That decision is left entirely to its discretion. This requirement is eliminated "under emergent conditions precluding application for a pass," provided there is an explanatory parental note in the possession of the minor. The words "emergent conditions" are no different than the words "emergency errand." They fail to achieve constitutional validity for the same reason.

C. Overbreadth.

An ordinance which reaches too far, stifling the exercise of constitutional rights when more narrowly drawn provisions will accomplish the same purpose, is unconstitutionally over-broad. The overbreadth doctrine applies when a law "does not aim specifically at evils within the allowable area of [government] control but ... sweeps within its ambit other activities that in ordinary circumstances constitute an exercise" of protected First Amendment rights. Thornhill v. Alabama, 310 U.S. 88, 97, 60 S.Ct. 736, 741, 84 L.Ed. 1093 (1940).
*566 The Bordentown curfew ordinance prohibits every minor under the age of 18 years from being in a "public place" between the hours of 9:00 p.m. and 6:00 a.m. every day of the year. The only exceptions are (1) when a minor is accompanied by a parent or guardian, or (2) is upon an emergency errand or legitimate business consented to by the parent or guardian, and then only if the minor possesses a pass issued by the police department upon application of the parent or guardian, or (3) under emergent conditions precluding application for a pass provided the minor possesses a note from the parent or guardian identifying the minor, the emergency involved and the time of day to be encompassed by the note.
It therefore appears that the activities of both emancipated and unemancipated minors are limited by the ordinance. Minors accompanied by a responsible adult who is not a parent or guardian (defined as an "adult person having care, custody or control of a minor") are nevertheless subject to the law. No provisions are made permitting attendance at late school events, church affairs, political meetings or sports events unless a parent or guardian accompanies the minor or a pass is obtained. These activities are to be encouraged, not discouraged, by unnecessarily burdensome restrictions.
A 17-year-old minor who visits a friend in an adjoining house between the prohibited hours is subject to the criminal penalties of the ordinance, as are the parents of that minor. The definition of "public place" includes "privately-owned real property." A minor standing on the front lawn of his or her own home between the hours of 9:00 p.m. and 6:00 a.m. violates the ordinance unless the person owning or controlling the property has given prior permission for this so called "loitering" activity. A minor responding to a life-threatening family emergency must delay the errand until a parent or guardian has provided an explanatory note for the minor to carry. No exception is made in case the parent or guardian is too incapacitated to provide the note. The curfew hours may be unreasonable. *567 Nothing in the ordinance provides any basis for the selection of any particular time span for the curfew.
It is obvious from this recital that the ordinance is unconstitutionally overbroad. It contains unnecessarily sweeping restrictions of fundamental personal liberties of children and adults: their freedom of speech, assembly and religion, as well as their right to travel and to loiter. Walking, strolling, wandering, and loafing "are historically part of the amenities of life as we have known them .... these unwritten amenities have been in part responsible for giving our people the feeling of independence and self-confidence, the feeling of creativity." Papachristou v. Jacksonville, 405 U.S. 156, 164, 92 S.Ct. 839, 844, 31 L.Ed.2d 110 (1972). Papachristou describes these amenities as fundamental rights. See also Richards v. Thurston, 424 F.2d 1281, 1284 (1 Cir.1970); Doe v. Bolton, 410 U.S. 179, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973) (concurring opinion of Justice Douglas in which he termed them fundamental freedoms).
The right to travel, loiter and loaf are protected by the Due Process Clause. The Bykofsky court had the following to say:
The rights of locomotion, freedom of movement, to go where one pleases, and to use the public streets in a way that does not interfere with the personal liberty of others are basic values "implicit in the concept of ordered liberty" protected by the due process clause of the Fourteenth Amendment. [401 F. Supp. at 1254; United States v. Wheeler, 254 U.S. 281, 293, 41 S.Ct. 133, 134, 65 L.Ed. 270 (1920)]
The court added:
No right is more sacred, or is more carefully guarded, by the liberty assurance of the due process clause than the right of every citizen to the possession and control of his own person, free from restraint or interference by the state.... Uninhibited movement is essential to freedom. [Id. at 1255; Union Pacific R. Co., v. Botsford, 141 U.S. 250, 251, 11 S.Ct. 1000, 1001, 35 L.Ed. 734 (1891); other citations omitted]
In Kent v. Dulles, 357 U.S. 116, 78 S.Ct. 1113, 2 L.Ed.2d 1204 (1958) the Court said: "[t]he right to travel is a part of the `liberty' of which the citizen cannot be deprived without the due process of law under the Fifth Amendment ... Freedom of *568 movement is basic in our scheme of values." Id. at 125-126, 78 S.Ct. 1118.
Even if a legitimate and substantial purpose lies behind the law (a fact that does not appear on the face of the ordinance), that purpose cannot be achieved by a broad interference with constitutional liberties when "less drastic means for achieving the same basic purpose" are available. Shelton v. Tucker, 364 U.S. 479, 488, 81 S.Ct. 247, 252, 5 L.Ed.2d 231 (1960). Certainly "less drastic means" are available to the city. The power to arrest, for example, is readily available to the police when criminal or disorderly activities occur.

D. The Constitutional Rights of Children; Equal Protection.

Minors are vested with fundamental constitutional rights. Tinker v. Des Moines Independent Community School District, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969). Application of Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967) held that juveniles had due process rights, namely, the right to notice, counsel, confrontation and cross-examination as well as the privilege against self-incrimination. The Court said "neither the Fourteenth Amendment nor the Bill of Rights is for adults alone." Id. at 13, 87 S.Ct. at 1436. In a concurring opinion Justice Black said:
Where a person, infant or adult, can be seized by the State, charged, and convicted for violating a state criminal law, and then ordered by the State to be confined for six years, I think the Constitution requires that he be tried in accordance with the guarantees of all the provisions of the Bill of Rights made applicable to the States by the Fourteenth Amendment. Undoubtedly this would be true of an adult defendant and it would be a plain denial of equal protection of the law  an invidious discrimination  to hold that others subject to heavier punishment, could, because they are children, be denied these same constitutional safeguards. [Id., at 61, 87 S.Ct. at 1461 (Black, J., concurring)]
See also State in the Interest of Carlo, 48 N.J. 224, 236 (1966). However, as Bykofsky notes, the United States Supreme Court has dealt with only a limited class of minors' rights. It has not analyzed the "totality of the relationship of the minor and the *569 State." 401 F. Supp. at 1253-1254; Ginsberg v. New York, 390 U.S. 629, 88 S.Ct. 1274, 20 L.Ed.2d 195 (1968) (citing Gault).
While the rights of minors are not as extensive as those of adults, id. at 649-650, 88 S.Ct. at 1285-1286 (Stewart, J., concurring), children are recognized as "persons" under the Federal Constitution with "fundamental rights which the State must respect," including freedom of speech. Tinker, supra, 393 U.S. at 511, 89 S.Ct. at 739. "Constitutional rights do not mature and come into being magically only when one attains the state-defined age of majority." Planned Parenthood v. Danforth, 428 U.S. 52, 74, 96 S.Ct. 2831, 2843, 49 L.Ed.2d 788 (1976). In Erznoznik v. Jacksonville, 422 U.S. 205, 95 S.Ct. 2268, 45 L.Ed.2d 125 (1975), the Court said that minors "are entitled to a significant measure of First Amendment protection.... In most circumstances, the values protected by the First Amendment are no less applicable when government seeks to control the flow of information to minors." Id. at 212-214, 95 S.Ct. at 2274-2275. Prince v. Massachusetts, 321 U.S. 158, 64 S.Ct. 438, 88 L.Ed. 645 (1944) upheld the constitutionality of a statute restricting minors' use of the streets for selling merchandise. However, the Court recognized children's right to religious freedom, as it had previously in West Va. Bd. of Education v. Barnette, 319 U.S. 624, 63 S.Ct. 1178, 87 L.Ed. 1628 (1943). The Prince Court, after acknowledging that the statute would be invalid as to adults, said:
The State's authority over children's activities is broader than over like actions of adults. This is peculiarly true of public activities and in matters of employment.
....
It is true that children have rights, in common with older people, in the primary use of highways. But even in such use, the streets afford dangers for them not affecting adults. And in other uses, whether in work or in other things, this difference may be magnified. This is so not only when children are unaccompanied but certainly to some extent when they are with their parents. What may be wholly permissible for adults therefore may not be so for children, either with or without their parents' presence. [321 U.S. at 168-169, 64 S.Ct. at 443-444]
*570 The Prince message is that the government, though curtailing certain freedoms in the process, may protect children from "abuses." Id. at 165, 64 S.Ct. at 441.
Thus children have constitutional rights, including First Amendment rights. Tinker, supra (speech); Prince, supra and West Va. Bd. of Ed., supra (religion). They have a right to the equal protection of the law. Brown v. Bd. of Education, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954) (racial discrimination). However, these rights of children, like the rights of adults, can be diminished in appropriate circumstances. The question here is whether it is a denial of equal protection to enact a curfew ordinance that diminishes only the constitutional rights of children. In order to decide that question it is necessary to decide what equal protection test this court should apply.
The United States Supreme Court has identified four tests which may be used in deciding whether equal protection has been denied in given cases; it has never applied any of them in the present setting.
The rational basis test is to be applied unless a suspect class or a fundamental right is involved. This test provides the questioned law with a strong presumption of constitutionality and requires the government to show only that its classification scheme is related rationally to a legitimate state interest. When a suspect class or a fundamental right is involved, the law must be strictly scrutinized and the government must justify its enactment by showing that it serves a compelling state interest. San Antonio Ind. School Div. v. Rodriquez, 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973).
The Court has adopted an intermediate test for equal protection challenges to gender-based classifications. See Craig v. Boren, 429 U.S. 190, 197-198, 97 S.Ct. 451, 456-457, 50 L.Ed.2d 397 (1976). It is not considered appropriate here because of its limited use. A fourth and somewhat less severe test than "compelling interest" has been used when considering the privacy *571 rights of minors. In Carey v. Population Services International, 431 U.S. 678, 97 S.Ct. 2010, 52 L.Ed.2d 675 (1977) the Court said: "State restrictions inhibiting privacy rights of minors are valid only if they serve `any significant state interest ...' that is not present in the case of an adult." Id. at 693, 97 S.Ct. at 2020 (quoting Planned Parenthood, supra). The Carey Court, noting that the test was apparently less vigorous than the "compelling state interest" test applied when dealing with the privacy rights of adults, noted that lesser scrutiny is appropriate "because of the States' greater latitude to regulate the conduct of children" and the fact that "the law has generally regarded minors as having a lesser capability for making important decisions." Id. at 693, n. 15, 97 S.Ct. at 2020, n. 15. The Court, however, held that there was a fundamental right involved in decisions concerning child bearing and said:
It is enough that we again confirm the principle that when a State, as here, burdens the exercise of a fundamental right, its attempt to justify that burden as a rational means for the accomplishment of some significant state policy requires more than a bare assertion, based on a conceded complete absence of supporting evidence, that the burden is connected to such policy. [Id. at 696, 97 S.Ct. at 2022]
On the basis of San Antonio and Carey, which are illustrative cases, the compelling interest test is applicable to any equal protection challenge to a fundamental right of minors. That is the test to apply here if the curfew ordinance affects fundamental rights. Two courts which have considered the question have gone in opposite directions. Bykofsky applied the rational basis test. In re Mosier, 59 Ohio Misc. 83, 394 N.E.2d 368 (Ct.Comm.Pl. 1978), applied the compelling interest test. Aladdin's Castle v. Mesquite, 630 F.2d 1029 (5 Cir.1980) considered an ordinance restricting the use of coin-operated amusement machines to those above 17 years-of-age. It struck the ordinance down as unconstitutional by reason of age discrimination under either the rational basis or the compelling interest test. It is clear, however, that it mandated use of the latter test with respect to the law's denial of the First Amendment *572 right of association because it was fundamental. Id. at 1041.
Tinker and Prince held that children have First Amendment rights. First Amendment rights are fundamental and therefore subject to the compelling interest test. In N.A.A.C.P. v. Button, 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963) the Court said:
The decisions of this Court have consistently held that only a compelling state interest in the regulation of a subject within the state's constitutional power to regulate can justify limiting First Amendment freedoms. [at 438, 83 S.Ct. at 340]
Papachristou appears to have made travel, including loitering, a fundamental right subject to the same test. Indeed, it seems obvious that travel is necessary to the most important exercises of the freedoms of speech, assembly and religion.
The fact that fundamental rights are involved does not mean that such rights may not be restricted. The contrary is true. Rights of speech and assembly, for example, may be regulated by time, place and manner restrictions serving a compelling government interest. Heffron v. International Society for Krishna Consciousness, 452 U.S. 640, 647-648, 101 S.Ct. 2559, 2563-2564, 69 L.Ed.2d 298 (1981). Consequently, the fundamental rights of children may be so regulated. The fact that regulation is permissible, however, does not change the basic fact that the rights are fundamental. Consequently, neither the rational basis test nor the significant state interest test is applicable here. The test to be applied to the Bordentown ordinance is the compelling interest test.
What compelling interest does the City of Bordentown have in restricting the fundamental rights of minors by imposing a curfew upon them which does not affect adults? Bellotti v. Baird, 443 U.S. 622, 99 S.Ct. 3035, 61 L.Ed.2d 797 (1979) provides some guidance. The Court in that case listed three reasons for treating children's constitutional rights less generously than those of adults: (1) the peculiar vulnerability of children; (2) their inability to make critical decisions in an *573 informed, mature manner; and (3) the importance of the parental rule in child rearing. Id. at 634, 99 S.Ct. at 3043. These reasons were considered in Johnson v. City of Opelousas, 658 F.2d 1065 (5 Cir.1981), a case involving a curfew ordinance. It concluded that the ordinance was overbroad, without addressing other constitutional issues. However, its consideration of the Bellotti criteria offers some pertinent insights:
... there is no issue of peculiar vulnerability of children with respect to their attending or traveling to or from a religious, school, commercial, or other bona fide organized activity during nighttime.... Second, the associational, employment, and travel activities with which we are concerned ... do not involve any `critical decisions' on the part of minors.... Finally, . .. the curfew ordinance inhibits rather than promotes the parental role in child rearing.... [658 F.2d at 1073-1074]
Aladdin's made a similar Bellotti analysis and concluded that "none of Justice Powell's factors even remotely" applied to an ordinance prohibiting 17-year olds from using amusement devices. Id. at 1043.
The same reasoning applies to the Bordentown ordinance, demonstrating not only overbreadth and the lack of a compelling government interest in the curfew restrictions, but the opposite  a compelling government interest in the encouragement of many activities which the ordinance prohibits. It denies equal protection.

E. The Rights of Parents.

[C]onstitutional interpretation has consistently recognized that the parents' claim to authority in their own household to direct the rearing of their children is basic in the structure of our society. `It is cardinal with us that the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder.' [Ginsberg, supra, 390 U.S. at 639, 88 S.Ct. at 1280 (quoting Prince, supra, 321 U.S. at 166, 64 S.Ct. at 442)]
Any law supporting the parental role advances a strong state interest while one which inhibits that role does the opposite. Cases suggesting a constitutional parental right against interference by the state are Ginsberg, supra, Prince, supra, Carey, supra (dissenting opinion), Pierce v. Society of Sisters, *574 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925), Wisconsin v. Yoder, 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972) and Smith v. Organization of Foster Families, 431 U.S. 816, 97 S.Ct. 2094, 53 L.Ed.2d 14 (1977). Bykofsky discusses these decisions in noting that "[t]he Constitution protects the right of parents to direct their children's upbringing and family autonomy against state interference." 401 F. Supp. at 1262. It concludes, however, that "in cases in which harm to the physical or mental health of a child or to the public safety, peace, order or welfare is demonstrated, these legitimate state interests may override the parents' qualified right to control the upbringing of their children." Id. at 1264.
The Bordentown ordinance, by preventing children from exercising fundamental constitutional rights, interferes with the right of parents to have their children exercise those rights. Nearly all parents in this country want their children to understand, uphold and use their rights of free speech, assembly, religion and travel. The ordinance impermissibly restricts the right of parents to have their children do so.
It may be argued that the rights of parents are properly restricted by the city's legislation because it is designed to protect children from risks attending the nocturnal use of city streets. That argument, however, overlooks the fact that parents can and should control their children's use of the streets without a coercive law requiring them to do so. The Bordentown ordinance, by reason of its vague and overbroad provisions and the lack of any showing of a compelling state interest permitting discriminatory treatment of children, unconstitutionally restricts the rights of parents in the same way that it impermissibly restricts the rights of children.

F. A Sampling of Curfew Cases Decided in Other Jurisdictions.

A sampling of decisions from other jurisdictions generally confirm the conclusions reached in the present case. For example:

*575 (1) Ex Parte McCarver, 39 Tex.Crim. 448, 46 S.W. 936 (Tex.Crim. 1898):
The curfew ordinance is an undue invasion of personal liberties. Boys and girls have the same rights of ingress and egress as citizens of mature years enjoy. [39 Tex.Crim. at 452, 46 S.W. at 937]
(2) Alves v. Justice Court of Chico Judicial Dist., 148 Cal. App.2d 419, 306 P.2d 601 (Ct.App. 1957):
Police power is subject to a rule of reasonableness. The curfew ordinance is invalid because it prohibits many lawful activities and is therefore an unreasonable invasion of personal rights. It is unconstitutional. [148 Cal. App.2d at 424-425, 306 P.2d at 605]
(3) City of Seattle v. Pullman, 82 Wash.2d 794, 514 P.2d 1059 (Supr.Ct. 1973):
Government has an interest in the well-being of minors. However, ordinances and statutes designed to further such interests must reasonably relate to that purpose and do so without violating protected rights.
The ordinance makes no distinction between conduct calculated to harm and that which is essentially innocent and is thereby an unreasonable exercise of the police power.
The government may protect minors from abuses but what are the abuses here? The court must speculate in order to answer that question but no speculation is necessary as to the fact that freedoms are invaded. [514 P.2d at 1063]
(4) In Re Doe, 54 Hawaii 647, 513 P.2d 1385 (1973):
The trend toward extending full constitutional protection to juveniles has continued since Gault. [513 P.2d at 1388 (Ordinance held to be unenforceable as too vague and imprecise)]
(5) W.J.W. v. State, 356 So.2d 48 (Fla.Ct.App. 1978):
The curfew ordinance constitutes an impermissible invasion of personal rights and liberties.
Restraining children under the age of 16 from freely walking upon the streets or other public places when no emergency exists is incompatible with the freedoms of speech, association, peaceful assembly and religion secured to all citizens of Florida by Art. I of the Florida Constitution. [at 50]
Cases upholding the validity of curfew ordinances are:
(a) In Re Nancy C., 28 Cal. App.3d 747, 105 Cal. Rptr. 113 (Cal.Ct.App. 1972)
The test of a curfew ordinance is its "reasonableness." Ordinance in question is valid because it is a "loitering" type of ordinance not a "presence" ordinance. It does not prevent going and coming from legitimate activities.
(b) People v. Walton, 70 Cal. App.2d Supp. 862, 870, 161 P.2d 498, 503 (App.Ct. 1945)
Curfew ordinance approved on same basis as ordinance in Nancy C.

The reasoning in Nancy C. and Walton was disapproved in People v. Chambers, 32 Ill. App.3d 444, 335 N.E.2d 612 (App.Ct. 1975). It said:

*576 In our opinion, the Illinois curfew law which restrains a segment of our society from freely walking the streets when no emergency exists, is incompatible with the basic principles upon which free societies are founded. Since the curfew statute violates the basic spirit of a free society, as well as the specific constitutional guarantees noted above [travel, speech, association and religion], it violates both the federal and state constitutions. [335 N.E.2d at 620]
A general discussion of these cases and others, as well as curfew ordinances in general, may be found in "Nonemergency Municipal Curfew Ordinances and the Liberty Interests of Minors," 12 Fordham Urban L.J. 513 (1984).

G. The Rebuttable Presumption of the Parents' Knowledge.

The Bordentown curfew ordinance requires a parent to be notified by the chief of police or his designee of any charge made against a minor. It then states:
If at any time within forty-five (45) days following the giving of notice as provided in Section 9 hereof, the minor to whom said notice related or applied is again charged, and upon such charge is subsequently convicted of a violation of the curfew provisions of this Ordinance, it shall be rebuttably presumed that the minor committed such subsequent violation with the knowledge, allowance, permission or sufferance of the parent or guardian of such minor, and said parent or guardian shall thereupon be charged with a violation of this Ordinance....
In Tot v. United States, 319 U.S. 463, 63 S.Ct. 1241, 87 L.Ed. 1519 (1943), the Court said:
[A] statutory presumption cannot be sustained if there be no rational connection between the fact proved and the ultimate fact presumed, if the inference of the one from proof of the other is arbitrary because of the lack of connection between the two in common experience. [at 467, 63 S.Ct. at 1244]
Tot was followed by Leary v. United States, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969), in which the Court held that:
[A] criminal statutory presumption must be regarded as "irrational" or "arbitrary," and hence unconstitutional, unless it can at least be said with substantial assurance that the presumed fact is more likely than not to flow from the proved fact on which it is made to depend. [at 36, 89 S.Ct. at 1548]
Barnes v. United States, 412 U.S. 837, 93 S.Ct. 2357, 37 L.Ed.2d 380 (1973), considered the question of whether an element of a crime, e.g., as here, knowledge could be proved beyond a reasonable doubt when the State relied upon an inference (treated no differently than a presumption) as its only evidence of that element's existence. It said:

*577 What has been established by the cases, however, is at least this: that if a statutory inference submitted to the jury as sufficient to support conviction satisfies the reasonable-doubt standard (that is, the evidence necessary to invoke the inference is sufficient for a rational juror to find the inferred fact beyond a reasonable doubt) as well as the more-likely-than-not standard, then it clearly accords with due process. [at 843, 93 S.Ct. at 2361]
Our Supreme Court endorsed this concept succinctly in State v. Ingram, 98 N.J. 489 (1985):
In general, inquiry as to whether a particular presumption meets constitutional requirements has focused on the degree to which the presumed fact tends, in reality, to flow from the established fact. [at 496]
Our Appellate Division, relying on Leary, ruled against the validity of a rebuttable presumption of parental authority contained in a Trenton ordinance. Doe v. City of Trenton, 143 N.J. Super. 128 (App.Div. 1976), aff'd per curiam 75 N.J. 137 (1977). It said that it did not follow that proof of two public breach-of-the-peace convictions on the part of a minor within a one-year period "more likely than not" showed "that the second was the result of parental action or inaction." 143 N.J. Super. at 133.
The present ordinance creates a rebuttable presumption, based on notice of a prior violation, that parents have knowledge of a present curfew violation. This distinguishes the present ordinance from the Trenton ordinance considered in Doe. There, the ordinance created a presumption that the parents had knowledge of juvenile misconduct. That is a substantial difference. With respect to misconduct, it cannot be said with "substantial assurance that the presumed fact is more likely than not to flow from the proved fact on which it is made to depend." Parents have no way of knowing whether their children are misbehaving on any particular occasion. It is to be expected, however, that parents will have some knowledge of the whereabouts of their minor children when they are absent during curfew hours. Consequently, it is "more likely than not" that parents, once notified of a curfew violation, will be sensitive to the fact that their minor child is again outside the home in violation of the curfew.
*578 The rebuttable presumption in the Bordentown ordinance realistically meets the reasonable doubt and more-likely-than-not tests. It is therefore valid, an immaterial conclusion since the ordinance has been struck down, but one required by a trial court's obligation to dispose of all issues.

CONCLUSION
The ordinance is unconstitutional for all of the reasons stated. It cannot be enforced.[1]
NOTES
[1] The curfew ordinance adopted by the intervenor, Willingboro, cannot be addressed here. Its interesting provisions, e.g., its exemption of First Amendment activities, may be considered only if it becomes an issue for adjudication. It is not so involved in this litigation.