DAVIS, Judge.
The State appeals the trial court’s order declaring the City of Pinellas Park’s juvenile curfew ordinance to be an unconstitutional restriction on a parent’s fundamental right to raise his or her child. We reverse.

THE CURFEW ORDINANCE

The City originally adopted its juvenile curfew ordinance on May 22, 1997, to reduce juvenile crime and victimization. The ordinance declares it unlawful for a juvenile to be or remain in a public place or establishment between 11:00 p.m. and 6:00 a.m. of the following day, Sunday through Thursday, and 12:01 a.m. through 6:00 a.m. on Saturdays, Sundays, and legal holidays. *1144 See Pinellas Park, Fla., Code § 16.124(D)(1) (1997). Parents violate the ordinance if they knowingly allow their child to violate the curfew. See § 16.124(F). A juvenile is any person who has not reached the age of eighteen and who is not legally emancipated by marriage or otherwise. See § 16.124(C)(3). The ordinance provides several exceptions to its general prohibitions, to wit:
(1) when the juvenile is accompanied by his or her parent or by another adult at least twenty-one years old and who is authorized by the juvenile’s parent to have custody;
(2) when the juvenile is involved in an emergency or engaged, with his or her parent’s permission, in an emergency errand;
(3) when the juvenile is attending or traveling to or from an activity that involves the exercise of rights protected under the First Amendment to the United States Constitution (e.g., religious services, government meetings, political party meetings);
(4) when the juvenile is going to and from lawful employment, or in a public place or establishment in connection with or as required by a business, trade, profession, or occupation in which the juvenile is lawfully engaged;
(5) when the juvenile is returning directly home from a school-sponsored, religious, or civic organization function;
(6) when the juvenile is on the property or on the sidewalk of the juvenile’s own residence or an adult next-door neighbor’s residence with that neighbor’s permission;
(7) when the juvenile is engaged in interstate travel or bona fide intrastate travel with the consent of the juvenile’s parent;
(8) when the juvenile is attending an organized event sponsored by a theme park or entertainment complex; or
(9) when the juvenile is in a public place or establishment as otherwise authorized by the City Council for an activity or event not specifically outlined in the other exceptions and which is sponsored by a school, religious, civic, social, or other similar organization or group.
See § 16.124(E).
The police cited T.M., A.N., and D.N. for violating the ordinance. The State Attorney’s Office filed a separate petition for delinquency against each juvenile. Prior to an adjudicatory hearing on the petitions, each of the juveniles moved the trial court to rule the ordinance unconstitutional on its face and dismiss the petitions for delinquency. The juveniles challenged the ordinance on several grounds. They suggested that the ordinance unconstitutionally infringes on certain fundamental rights. Additionally, the juveniles alleged that the ordinance is vague and overly broad. Finally, they argued that the ordinance is invalid because it is inconsistent with state law.
On September 8, 1998, the trial court granted the juveniles’ motions to dismiss. The trial court reasoned that the juveniles’ parents had a fundamental right to raise their children without governmental intrusion.[1] Accordingly, the trial court applied the strict scrutiny test[2] in review *1145 ing the ordinance. Applying strict scrutiny, the trial court determined that the City has a compelling interest in reducing juvenile crime and victimization. However, in spite of the City’s compelling interest, the trial court ruled that the ordinance was not narrowly tailored in the least restrictive manner to achieve that interest.
Various courts have upheld juvenile curfew ordinances against constitutional challenges when the ordinances have been properly drafted. See, e.g., Metropolitan Dade County v. Pred, 665 So.2d 252 (Fla. 3d DCA 1995); Sansbury v. City of Orlando, 654 So.2d 965 (Fla. 5th DCA 1995); People in Interest of J.M., 768 P.2d 219 (Colo.1989). Other courts, including this court, have struck down such ordinances for being overly broad, vague, or for infringing on basic constitutional rights when the ordinances did not contain adequate exceptions. See, e.g., T.F. v. State, 431 So.2d 342 (Fla. 2d DCA 1983); S.W. v. State, 431 So.2d 339 (Fla. 2d DCA 1983); K.L.J. v. State, 581 So.2d 920 (Fla. 1st DCA 1991). We must determine whether the Pinellas Park ordinance falls in the former or latter category of cases.
The trial court invalidated the subject ordinance after concluding that parents have a fundamental right to raise their children, and that the City has improperly infringed on that right. As explained below, we disagree with the trial court’s conclusion that the City unconstitutionally interfered with a parent’s decision to allow his or her child to travel in public areas late at night without supervision.

STANDING

Citing State v. Hagan, 387 So.2d 943 (Fla.1980), the State argues that juveniles in a delinquency proceeding may not challenge the constitutionality of the ordinance on the basis that the ordinance impermissi-bly impacts their parents’ substantive due process rights. Since the parents are not parties to this action, the State suggests that this issue is not properly before the court. In contrast, the juveniles argue that even if the court accepts the State’s contention, they, the juveniles, have a fundamental right of their own to be parented without undue governmental intrusion.
We need not rule whether the juveniles had standing to assert this claim. Assuming that T.M., A.N., and D.N. properly raised the issue, as we explain below, we reject the trial court’s ruling that the ordinance violated a fundamental right related to child rearing. However, because we must affirm the trial court’s dismissal if it reached the right decision for the wrong reason, we address each of the juveniles’ challenges to the ordinance.

FUNDAMENTAL RIGHTS

The juveniles ask us to decide whether the ordinance impermissibly infringes on certain fundamental rights. If the ordinance operates to the disadvantage of a suspect class or impairs the exercise of a fundamental right protected by the constitution, we must apply the strict scrutiny test. See, e.g., Reno v. Flores, 507 U.S. 292, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993). Although the ordinance does single out juveniles for disparate treatment on the basis of age, the United States Supreme Court has previously determined that age alone does not define a suspect class. See Gregory v. Ashcroft, 501 U.S. 452, 470, 111 S.Ct. 2395, 115 L.Ed.2d 410 (1991). Absent the involvement of a suspect class or a fundamental right, courts usually invoke the rational basis test. See, e.g., Heller v. Doe, 509 U.S. 312, 113 S.Ct. *1146 2637, 125 L.Ed.2d 257 (1993). However, in recent cases involving juvenile rights, courts have employed an intermediate, or “heightened,” scrutiny. See, e.g., Hutchins v. District of Columbia, 188 F.3d 531 (D.C.Cir.1999) (en banc). With that observation in mind, we investigate the nature of the rights that the ordinance impacts.

A. Fundamental Right to Freedom of Movement

Although courts agree that the Equal Protection Clause guarantees a fundamental right to interstate travel, there is no general consensus that a person has a fundamental right to free movement under either the First Amendment, Equal Protection Clause, or Due Process Clause. See Hutchins, 188 F.3d at 535-39. For reasons explained below, we need not determine whether such a fundamental right exists in juveniles.
Although courts disagree whether such a fundamental right exists in adults, here in Florida, the Florida Supreme Court, in Wyche v. State, 619 So.2d 231 (Fla.1993), wrote:
Hailing a cab or friend, chatting on a public street, and simply strolling aimlessly are time-honored traditions in our society and are clearly protected under Florida as well as federal law. All Florida citizens enjoy the inherent right to window shop, saunter down a sidewalk, and wave to friends and passersby without fear of arrest.
Id. at 235 (citations omitted). Assuming arguendo that juveniles have a similar coextensive right, an assumption that is by no means certain, we must ascertain whether this general right extends to a specific juvenile’s right to be in a public place or establishment at night without adult supervision. The juveniles cite B.B. v. State, 659 So.2d 256 (Fla.1995), in which the Florida Supreme Court held that the privacy right guaranteed by article I, section 23, of the Florida Constitution extends to minors. By analogy, the juveniles urge that they have a right to freedom of movement coextensive with that of adults, which extends to being in a public place or establishment without adult supervision.
 We are not convinced that juveniles would have such a fundamental right to freedom of movement, much less one which is coextensive with that of adults. See Bellotti v. Baird, 443 U.S. 622, 634, 99 S.Ct. 3035, 61 L.Ed.2d 797 (1979) (setting forth factors justifying treating minors and adults differently); Pred, 665 So.2d at 253 (stating Florida and U.S. Constitutions do not give children “same quantum or quality of rights as adults”). Moreover, this “right” would not extend to being in a public place or establishment at night without adult supervision. The government has broader authority over the actions of children than over those of adults. See Prince v. Massachusetts, 321 U.S. 158, 168, 64 S.Ct. 438, 88 L.Ed. 645 (1944). There are three reasons why the constitutional rights of children are not coextensive with those of adults: (1) the peculiar vulnerability of children; (2) a child’s inability to make critical decisions in an informed, mature manner; and (3) the importance of a parent’s role in child rearing. See J.M., 768 P.2d at 223 (citing Bellotti, 443 U.S. 622, 99 S.Ct. 3035). Furthermore, the law considers all minors, even seventeen-year-olds, to be in custody or under someone’s supervision at all times. See Schall v. Martin, 467 U.S. 253, 265, 104 S.Ct. 2403, 81 L.Ed.2d 207 (1984); Pred, 665 So.2d at 253.
The juveniles in this case argue that the ordinance prohibits innocent acts such as making a trip to the local convenience store alone to buy milk during the late night hours. We agree that the ordinance does prohibit such acts. However, there are instances where the public interest may require the regulation or prohibition of innocent acts, such as limiting a juvenile’s freedom of movement without supervision at night in the instant case, in order to enforce the law against evil acts. See State v. Saiez, 489 So.2d 1125, 1129 n. *1147 3 (Fla.1986) (citing State v. Leone, 118 So.2d 781, 784 (Fla.1960)).
Even if juveniles do not possess a fundamental right to freedom of movement, we agree that they do possess certain liberty interests in freedom of movement. Such a right, if it exists, does not instantaneously appear once a juvenile reaches the age of majority. See Planned Parenthood of Cent. Mo. v. Danforth, 428 U.S. 52, 74, 96 S.Ct. 2831, 49 L.Ed.2d 788 (1976). Hence, we find that the instant case warrants heightened scrutiny of the ordinance. See Carey v. Population Servs. Int’l, 431 U.S. 678, 693, 97 S.Ct. 2010, 52 L.Ed.2d 675 (1977) (applying intermediate scrutiny to minors’ privacy right).
To withstand heightened scrutiny, the curfew must be substantially related to the fulfillment of important government interests. See Hutchins, 188 F.3d at 541. Our review of the Pinellas Park ordinance leads us to conclude that it meets this test. After reviewing the statistical data in the record, we agree that the City’s asserted interests are important, and real, rather than merely conjectural.
The more difficult determination is whether the curfew is substantially related to that important government interest. Like the Hutchins court, we evaluate the “substantial relationship” on three interrelated concepts: (1) the factual premises upon which the City based its decision, (2) the logical connection between the remedy and the factual premises, and (3) the scope of the remedy. See id. at 542. Heightened scrutiny does not require a precise “fit” between the curfew and the problems of juvenile crime and victimization. See id. at 543.
The record contains statistical data that demonstrates that the number of crimes normally associated with juveniles dropped after the City adopted its ordinance. Although law enforcement had more contacts with juveniles during the survey time period in 1997 than during the same period in 1996, more than half of the 1997 contacts involved violations of the curfew, indicating that police may have intervened before juveniles either committed or witnessed crime or became crime victims. Keeping unsupervised juveniles off the public streets in the late hours of the night is directly related to curbing juvenile crime and protecting young people from becoming crime victims.
The ordinance withstands heightened scrutiny because the City has shown an important government interest, and has carefully fashioned the chosen remedy to focus on that interest. In so ruling, we note that the exceptions to the ordinance limit its scope. Most importantly, one exception provides that there are no restrictions on a juvenile’s activities if a parent, or an adult over the age of twenty-one with the parent’s approval, accompanies the juvenile.

B. Fundamental Right Associated with Child Rearing

The United States Supreme Court has acknowledged the fundamental liberty interest of parents in the “care, custody and management” of their children. See Santosky v. Kramer, 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). However, the Court has also rejected the view that a parent has an unqualified right, which supercedes all government regulation, to raise a child. See Prince, 321 U.S. at 170, 64 S.Ct. 438. In Prince, the Court concluded that “the state has a wide range of power for limiting parental freedom and authority in things affecting the child’s welfare.” Id. at 167, 64 S.Ct. 438. Again, in Wisconsin v. Yoder, 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972), the Court held that parental rights are subject to limitations “if it appears that parental decisions will endanger the health or safety of the child, or have the potential for significant social burdens.” Id. at 233-34, 92 S.Ct. 1526.
More recently, the Fourth Circuit observed that not every government restriction of a child’s freedom automatically *1148 infringes upon a parent’s fundamental rights. See Schleifer ex rel. Schleifer v. City of Charlottesville, 159 F.3d 843, 851 (4th Cir.1998), cert. denied, 526 U.S. 1018, 119 S.Ct. 1252, 143 L.Ed.2d 349 (1999). Although certain areas of child rearing are protected as fundamental, the right to allow a juvenile to be in a public place late at night without adult supervision is not of such an intimate, personal family nature as to rise to the level of a fundamental right. See Hutchins, 188 F.3d at 540-41. Accordingly, we hold that a parent does not possess a fundamental right to allow his or her child to be in a public place or establishment at night without adult supervision. See id.
We acknowledge that some case authority supports the trial court’s finding of a fundamental right and the use of the strict scrutiny test to determine whether the curfew ordinance violated a parent’s fundamental right to raise his or her child. See Hutchins v. District of Columbia, 942 F.Supp. 665, 672 (D.D.C.1996), reversed, 188 F.3d 531 (D.C.Cir.1999); Nunez ex rel. Nunez v. City of San Diego, 114 F.3d 935, 944 (9th Cir.1997); Qutb v. Strauss, 11 F.3d 488, 492 (5th Cir.1993); City of Milwaukee v. K.F., 145 Wis.2d 24, 426 N.W.2d 329, 339 (1988) (assuming strict scrutiny arguendo); McCollester v. City of Keene, 586 F.Supp. 1381, 1385 (D.N.H.1984). At the same time, we find more persuasive the decisions of other courts that have found something less than a fundamental right. See City of Panora v. Simmons, 445 N.W.2d 363, 369 (Iowa 1989); Bykofsky v. Borough of Middletown, 401 F.Supp. 1242, 1258 (M.D.Pa.1975). However, because we recognize a need to accommodate competing parental and government interests, we hold that the appropriate test in the instant case is heightened scrutiny. See Hutchins, 188 F.3d at 541; Schleifer, 159 F.3d at 847; Ramos ex rel. Ramos v. Town of Vernon, 48 F.Supp.2d 176, 184 (D.Conn.1999).
Although the provisions of the ordinance limit what parents may allow their children to do, this limitation on the parents’ discretion relates directly to the stated purpose of the ordinance. We also conclude the City was entitled to rely on the curfew experiences of other cities when enacting the ordinance. Hence, we find a substantial relationship between the goal of the ordinance and its remedy.
Like the Hutchins court, we agree that the exceptions to the ordinance will help the City achieve its goal of reducing juvenile crime and victimization. See Hutchins, 188 F.3d at 544. This ordinance, and the exceptions therein, reinforce parental authority and motivate parents to take an active role in supervising their children by encouraging children to be at home. See City of Panora, 445 N.W.2d at 370. The exceptions limit the scope of the curfew, thus ensuring that law enforcement focuses on those nocturnal activities which are most likely to lead to juvenile crime and victimization. See id. Accordingly, we hold that the ordinance withstands heightened scrutiny.

VAGUENESS

The juveniles claim that the ordinance is unconstitutionally vague because a police officer must determine whether a juvenile falls within any of the exceptions to the ordinance before establishing probable cause for a written warning or an arrest. A law is vague when it either: (1) fails to give fair warning as to what conduct it requires or prescribes, or (2) encourages arbitrary and erratic enforcement. See Papachristou v. City of Jacksonville, 405 U.S. 156, 162, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972). However, just because an ordinance is not precise or a model of clarity, that does not necessarily mean that a court will invalidate the ordinance. See L.B. v. State, 700 So.2d 370, 372-73 (Fla.1997).
The subject ordinance clearly defines who a juvenile is and what he or she can do. The terms of the ordinance are not such that they encourage arbitrary enforcement. “That the fertile legal imagi *1149 nation can conjure up hypothetical cases in which the meaning of disputed terms could be questioned does not render [a] provision unconstitutionally vague.” Hutchins, 188 F.3d at 546 (citing Terry v. Reno, 101 F.3d 1412, 1421 (D.C.Cir.1996)). Like the court in Hutchins, we agree that there may be marginal cases in which the courts must draw the distinction between protected and unprotected activities as they arise. See Hutchins, 188 F.3d at 546. However, such cases do not render the ordinance void for vagueness. See id.

OVERBREADTH

The overbreadth doctrine applies only if the ordinance is susceptible of application to conduct the First Amendment protects. See Southeastern Fisheries Ass’n, Inc. v. Department of Natural Resources, 453 So.2d 1351, 1353 (Fla.1984); Johnson v. City of Opelousas, 658 F.2d 1065, 1072 (5th Cir.1981). This ordinance would be subject to First Amendment scrutiny if it: (1) regulated conduct that has an expressive element, or (2) imposed a disproportionate burden upon those engaged in protected First Amendment activity. See Hutchins, 188 F.3d at 547 (citing Arcara v. Cloud Books, Inc., 478 U.S. 697, 703-704, 106 S.Ct. 3172, 92 L.Ed.2d 568 (1986)). This ordinance does not seek to regulate expressive conduct, and contains a specific exception for those juveniles engaged in First Amendment activities. We are not convinced that the ordinance reaches a substantial amount of constitutionally protected conduct, and thus reject the assertion that it is overly broad and therefore unconstitutional. See Broadrick v. Oklahoma, 413 U.S. 601, 615, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973); State v. Keaton, 371 So.2d 86, 91 (Fla.1979).

PENALTIES INCONSISTENT WITH STATE LAW

A local government ordinance may be inconsistent with state law, and thus invalid, in two distinct ways: (1) if the Florida Legislature has preempted a particular subject area, and (2) in those cases where both, a local government and the state have authority to legislate in a particular area, and the local government ordinance specifically conflicts with state statutes. See Tallahassee Mem’l Reg’l Med. Ctr., Inc. v. Tallahassee Med. Ctr., Inc., 681 So.2d 826, 831 (Fla. 1st DCA 1996) (citing art. 8, § 1(f), Fla. Const.). Although municipal ordinances are inferior in status to state statutes, where the two do not directly conflict, both should stand. See Boven v. City of St. Petersburg, 73 So.2d 232, 234 (Fla.1954). Two legislative enactments conflict when they cannot coexist. See Laborers’ Int’l Union, Local 478 v. Burroughs, 541 So.2d 1160, 1161 (Fla.1989). Conflict arises also when municipalities punish misconduct more severely than state statutes permit. See Wyche, 619 So.2d at 238.
The City chose not to adopt wholesale the model curfew ordinance outlined in sections 877.20-.25, Florida Statutes (1997), a local option law. Hence, the ordinance must stand on its own merits. Since the Florida Legislature envisioned that local governments would enact juvenile curfews, as evidenced by sections 877.20-.25, we find no merit in the suggestion that the State has preempted this particular area of the law. The only concern remaining is whether the ordinance conflicts with other statutes.
The State may file a petition for delinquency against a child when the child commits a delinquent act or violates a law. Subsection 985.03(57) defines delinquent act or violation of a law as “a violation of any law of this state, the United States, or any other state which is a misdemeanor or a felony or a violation of a county or municipal ordinance which would be punishable by incarceration if the violation were committed by an adult.” Subsection 985.231(l)(d), Florida Statutes (1997), provides that “[a]ny commitment of a delinquent child to the Department of Juvenile Justice must be for an indeterminate peri *1150 od of time, which may include periods of temporary release, but the time may not exceed the maximum term of imprisonment that an adult may serve for the same offense.”
The ordinance provides that the juvenile offender would be subject to “the penalty and rehabilitation as ordered by the court of competent jurisdiction pursuant to Florida Statutes, Chapter 39 Part II.[3] See Pinellas Park, Fla., Code § 16.124(D)(3) (1997). This language invokes the use of the juvenile justice system created by Florida law. The ordinance goes on to limit the maximum punishment, although it admittedly inartfully refers to that limit as six months “incarceration.” See id. The intent of this provision is to limit any juvenile commitment to a maximum of six months. The improper use of the word “incarceration” does not invalidate the ordinance, because the meaning of “incarceration,” when read in para materia with chapter 985, becomes clear.
Likewise, the fact that the ordinance imposes a punishment that is more severe than the model ordinance the legislature adopted does not render the ordinance unlawful. Although the model ordinance does include a penalty that is less severe than the subject ordinance, the model ordinance does not limit or proscribe the adoption of a more serious punishment. Accordingly, we conclude that the local ordinance does not conflict with state law.

CONCLUSION

We hold that the Pinellas Park juvenile curfew ordinance warrants and withstands heightened scrutiny, is neither vague nor overly broad, and does not conflict with state law. The remaining issues raised in the trial court lack merit, and we decline to address them here. Accordingly, we hold the ordinance is constitutional.
We acknowledge that our decision turns largely on the appropriate level of scrutiny used to review the ordinance. If this court applied strict scrutiny, it is likely that not all aspects of the ordinance would pass constitutional muster. Therefore, we certify the following questions of great public importance:
WHAT LEVEL OF SCRUTINY MUST A COURT APPLY WHEN REVIEWING THE CONSTITUTIONALITY OF A JUVENILE CURFEW ORDINANCE?
WHETHER THE PINELLAS PARK JUVENILE CURFEW ORDINANCE IS CONSTITUTIONAL?
Reversed and remanded for further hearings consistent with this ruling.
ALTENBERND, A.C.J., Concurs.
NORTHCUTT, J., Dissents with opinion.

. The trial court in the instant case relied primarily on the reasoning and holding of Hutchins v. District of Columbia, 942 F.Supp. 665 (D.D.C.1996). After the trial court made its ruling, the District of Columbia Court of Appeals, in Hutchins v. District of Columbia, 188 F.3d 531 (D.C.Cir.1999), reversed the district court’s decision.

. If a law impairs a fundamental right, that is, a right which has its source in, and is explicitly guaranteed by, the federal and/or Florida constitutions, the court strictly scrutinizes the law. See, e.g., Reno v. Flores, 507 U.S. 292, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993). To withstand strict scrutiny, a law must be necessary to promote a compelling governmental interest and must be narrowly tailored to advance that interest. See id.; Qutb v. Strauss, 11 F.3d 488, 492 (5th Cir.1993) (applying strict scrutiny to review Dallas ordinance). Alternatively, if the court determines the right not to be a fundamental right, the rational *1145 basis test applies. See San Antonio Indep. Sch. Dist. v. Rodriguez, 411 U.S. 1, 40, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973). To withstand a rational basis review, the law must "bear some rational relationship to legitimate state purposes.” Id. Finally, in a limited number of contexts, a middle-level review, also known as intermediate or heightened scrutiny, applies where the governmental objective is important, and the means to obtain that objective are substantially related to the objective. See, e.g., Craig v. Boren, 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976).

. Chapter 39, part II, has become a part of chapter 985, Florida Statutes (1997).